F I L E D
United States Court of Appeals
Tenth Circuit

November 1, 2006

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

KWABENA ESSUMAN,

Petitioner,

v.

ALBERTO R. GONZALES,
Attorney General,

Respondent.

Nos. 05-9573 & 05-9587
(No. A77-779-412)
(Petitions for Review)

ORDER AND JUDGMENT[*]

Before **HENRY**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

Petitioner Kwabena Essuman is a native and citizen of Ghana who

overstayed his non-immigrant visitor visa. He was ordered removed from the

United States in July 2003, an order affirmed by the Bureau of Immigration

Appeals (BIA). With a new attorney, petitioner filed a motion with the BIA

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

requesting that his case be reopened because of ineffective assistance of previous counsel. The BIA denied the motion to reopen, after which petitioner filed his petition for review with this court. That petition is No. 05-9573.

While the motion to reopen was pending before the BIA, petitioner filed a petition for a writ of habeas corpus in the district court in connection with the original removal order. That petition was transferred to this court under the provisions of the REAL ID Act of 2005, Pub. L. No. 109-13, § 106(c), 110 Stat. 231, 310, and our No. 05-9587 was opened. The two cases were consolidated for appeal.

## Background

Petitioner entered the United States in 1992 and stayed beyond the time authorized by his visitor's visa. Sometime after that, he learned that his father in Ghana was dying. Wishing to visit his father but still be able to return to the United States, petitioner gave $5000 and his passport to two individuals in New York who assured him that they could help him with his immigration problem. He also provided his newly found contacts with fingerprints and his medical record.

Petitioner testified that, unbeknown to him, the people he enlisted to help him had filed an immediate-relative visa petition based on an alleged marriage to a United States citizen and supported the petition with a false birth certificate and a false marriage certificate (the 1996 petition). Although petitioner's signature

-2-

apparently appears on some of the documents filed on his behalf in 1996, none of the application documents from the 1996 petition appear in the record.[1] Petitioner, however, admits that he signed some documents, Admin. R. at 192, but insists that he knew nothing of the attempted fraud. When the INS discovered the fraud, it denied his 1996 petition.[2] *Id.* at 249. Petitioner maintains that he was never advised of the submission of the fraudulent documents or of the INS's denial of the 1996 petition.

Petitioner eventually moved to Denver where he met his current wife, Trimika Williams, a United States citizen. In 1998, petitioner contacted attorney

---

[1]      Contrary to the statement in petitioner's opening brief, there is no evidence that petitioner signed blank documents. Pet'r Opening Br. at 1. Petitioner's citation to his motion to reopen as support for factual statements in his brief is inadequate to discharge his duty under Fed. R. App. P. 28(a)(9)(A) to provide record cites in support of his contentions. *See Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006). The only reference in the record to blank documents occurred when respondent's attorney asked at the removal hearing whether the documents petitioner signed had been blank. Petitioner's counsel indicated that she did not know. Admin. R. at 188.

[2]      "On March 1, 2003, the Immigration and Naturalization Service [(INS)] ceased to exist as an independent agency within the Department of Justice, and its functions were transferred to the Department of Homeland Security." *United States v. Sandoval*, 390 F.3d 1294, 1296 n.2 (10th Cir. 2004) (citing Homeland Security Act, Pub. L. No. 107-296 Sec. 471, 116 Stat. 2135 (Nov. 25, 2002), 6 U.S.C. § 291). Petitioner's cases cover the time period before and after the transfer of functions between the INS and the DHS. For simplicity, this opinion refers to the immigration agency as the INS.

Brandon Marinoff to discuss the possibility of adjusting his status based on his marriage to Ms. Williams. Mr. Marinoff, who had obtained documents relative to the 1996 petition through a Freedom of Information Act request, filed a second petition to adjust status (the 1999 petition) but did not disclose to the agency or attempt to explain the INS's earlier denial based on the fraudulent documents. The box on the 1999 petition asking whether petitioner had, "by fraud or willful misrepresentation of a material fact, ever sought to procure . . . [an] immigration benefit" was left unchecked. *Id.* at 108.

In response to the INS's Notice of Intent to Deny [the 1999] Petition, Mr. Marinoff presented the essence of his client's defense to the fraud charges and asked the agency to abate the matter while it conducted an investigation of the events surrounding the 1996 petition. *Id.* at 62. The agency eventually denied the 1999 petition, although evidence of that denial does not appear in the record. According to petitioner's attorney, petitioner's appeal of that denial remains pending.[3]

---

[3] The reference in petitioner's opening brief to the notice of appeal in the record is not to the appeal of the denial of petitioner's 1999 petition but rather to the appeal of an I-130 immediate-relative visa petition filed by Ms. Williams on petitioner's behalf. *See* Admin. R. at 72.

## Removal proceeding

After the denial of the 1999 petition, the agency referred petitioner's case to the immigration court for removal proceedings, asserting only that petitioner had overstayed his original visa. At the initial master calendar hearing, petitioner obtained a continuance to investigate the fraud matter. At a second master calendar hearing, he conceded removability, and the matter was set over for a merits hearing on adjustment of status.

At the merits hearing, petitioner's attorney, an associate of Mr. Marinoff, renewed her previous (and untimely) motion for another continuance and argued that, because there was no knowing misrepresentation on the part of petitioner, there could be no fraud. She also requested "in the future possibly a hearing o[r] formal hearing on the finding of fraudulent marriage." *Id.* at 183. Petitioner's attorney did not dispute the INS's assertion that he had no right of relief at the time of the hearing, *id.* at 186, a tacit admission that petitioner was ineligible for voluntary departure.

At the end of the hearing, the IJ denied petitioner's motion for another continuance and ordered him deported to Ghana. Petitioner was then allowed to make a brief personal statement in which he explained the circumstances surrounding the 1996 fraudulent application. Mr. Marinoff filed a notice of appeal from the removal order, arguing error because of the IJ's denial of the

motion for continuance, errors in any finding regarding marriage fraud, and deprivation of procedural and substantive due process. *Id.* at 161-63.

Shortly after Mr. Marinoff filed the notice of appeal, petitioner retained new counsel located in New York who prosecuted the appeal of the removal order before the BIA.[4] In that appeal, New York counsel focused almost exclusively on the continuance. In closing, new counsel urged remand to the IJ for a hearing to determine (1) whether petitioner was eligible to adjust his status or (2) whether he was eligible for waiver of any of the grounds of ineligibility for the relief he was seeking. *Id.* at 140.

The BIA affirmed the removal decision and dismissed the appeal. *Id.* at 123. In doing so, the BIA explained that the proceedings below involved a request for a continuance pending the adjudication of a second I-130 immediate-relative visa petition filed by petitioner's wife. Her previous petition had already been denied on the basis of the 1996 marriage fraud. The BIA reasoned that

> at the time of the respondent's requested continuance he was not eligible for any form of relief, and, in light of the evidence of record, likely was not going to be eligible for the requested relief. Given the facts as presented, we agree that the respondent did not present "good cause" for a further continuance.

---

[4] Mr. Marinoff eventually agreed to accept a one-year suspension from the practice of law. Admin. R. at 125. According to petitioner, he is now apparently reinstated but barred from practicing immigration law.

*Id.* at 123.  After the BIA's affirmance, petitioner retained present counsel who filed the motion to reopen and the petition for a writ of habeas corpus in the district court.

## Motion to reopen

## Case No. 05-9573

In the motion to reopen, petitioner requested remand to the immigration court for consideration of voluntary departure or any other proper relief based on the prejudice caused by Mr. Marinoff's ineffective assistance.  Specifically, petitioner charged, *inter alia*, that Mr. Marinoff had improperly handled the allegations of marriage fraud arising from the 1996 petition, failed to pursue a waiver of inadmissibility, failed to pursue an appeal of the denial of an I-130 immediate-relative visa petition by petitioner's wife, and failed to identify alternative relief in the form of voluntary departure at the removal hearing. *Id.* at 77.

The BIA denied the motion to reopen, reasoning that it did "not have jurisdiction to allow [petitioner] to seek recourse before the [INS] for his prior counsel's alleged ineffective assistance." *Id.* at 2.  As for counsel's failure to request voluntary departure, the BIA held that petitioner had failed to establish his prima facie eligibility for such relief because he failed to establish that he "warrants voluntary departure in the exercise of discretion." *Id.* at 3 (citing *Matter of Assaad*, 23 I&N Dec. 553 (BIA 2003), which the BIA reads to require

-7-

an alien to establish that he would have prevailed at the hearing or on appeal had the ineffective representation not occurred).

## Analysis

"We [have] jurisdiction to consider the BIA's denial of petitioner's motion to reopen the proceedings" because "[i]t is considered a final, separately appealable order." *Infanzon v. Ashcroft*, 386 F.3d 1359, 1361 (10th Cir. 2004). While aliens in removal proceedings have no Sixth Amendment right to effective counsel, *Michelson v. INS*, 897 F.2d 465, 467 (10th Cir. 1990), they do have a Fifth Amendment right to a fundamentally fair removal proceeding, *Osei v. INS*, 305 F.3d 1205, 1208 (10th Cir. 2002). Accordingly, a claim of ineffective assistance of counsel in civil immigration proceedings may be based on Fifth Amendment due process. *Michelson,* 897 F.2d at 468. An alien may prevail on a Fifth Amendment ineffective assistance of counsel claim in a removal proceeding only by showing that "the proceeding was so fundamentally unfair that [he] was prevented from reasonably presenting his case." *In re Lozada*, 19 I&N Dec. 637, 638 (BIA 1988); *see also Osei*, 305 F.3d at 1208.

We review the denial of a motion to reopen only for abuse of discretion. *Infanzon*, 386 F.3d at 1362. "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Id.* (quotation omitted).

The Supreme Court has explained that at least three grounds exist upon which the BIA may deny reopening:

> First, it may hold that the movant has not established a prima facie case for the underlying substantive relief sought. . . . Second, the BIA may hold that the movant has not introduced previously unavailable, material evidence . . . . Third, in cases in which the ultimate grant of relief is discretionary (asylum, suspension of deportation, and *adjustment of status*, but not withholding of deportation), the BIA may . . . simply determine that . . . the movant would not be entitled to the discretionary grant of relief.

*INS v. Abudu*, 485 U.S. 94, 104-05 (1988) (emphasis added). As noted above, the BIA denied the motion to reopen based on its perceived lack of jurisdiction[5] and because petitioner had not established that he would be entitled to the discretionary relief of voluntary departure.

In order to merit reopening based on ineffective assistance of counsel, a petitioner must comply with the procedural requirements of *In re Lozada*, 19 I&N Dec. 637, and further show that he was prejudiced by counsel's ineffectiveness. *Id*. at 638. Because the BIA found that petitioner complied with the procedural

---

[5]      The BIA provided no support for its holding that it had no jurisdiction to allow petitioner "to seek recourse before the [INS] for his prior counsel's alleged ineffective assistance." Admin. R. at 2. However, "[w]hile we may not supply a reasoned basis for the agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974). Because the matter at hand arose in the course of a removal hearing that charged petitioner solely with being a simple overstay, any claims arising from Mr. Marinoff's alleged ineffective assistance surrounding either the 1996 petition or the 1999 petition were not before the BIA. We are satisfied that we can reasonably understand this to be the basis for the BIA's jurisdictional holding, a holding we can affirm on appeal.

requirements of *In re Lozada*, we turn now to the correctness of the BIA's implicit decision that petitioner was not prejudiced under the Fifth Amendment's rubric of due process as applied in civil immigration proceedings. Here, as noted above, the test is whether "his counsel's ineffective assistance so prejudiced him that the proceeding was fundamentally unfair." *Akinwunmi v. INS*, 194 F.3d 1340, 1341 n.2 (10th Cir. 1999).

Because removal proceedings are civil in nature, the extensive constitutional safeguards of criminal proceedings do not apply, and the procedural due process attending removal proceedings is limited to an opportunity to be heard at a meaningful time and in a meaningful manner. *Schroeck v. Gonzales*, 429 F.3d 947, 951-52 (10th Cir. 2005). In his discussion of the standard of prejudice aliens in petitioner's situation must demonstrate, petitioner cites *United States v. Aguirre-Tello*, 324 F.3d 1181 (10th Cir. 2003), a criminal deportation case, for the proposition that he need only "demonstrate prejudice which might have affected the outcome of the proceedings." Pet'r Opening Br. at 30. Under this standard, he asserts that "it's practically impossible to suggest that the outcome might not have been different." *Id*. at 31. Indeed; and that is why we have rejected this as the standard to prove fundamental unfairness, even in criminal proceedings. What petitioner overlooks is that our first opinion in *Aguirre-Tello* was vacated, and that on rehearing en banc, we held that the standard for proving fundamental unfairness in a criminal context, with its

-10-

heightened constitutional protections, is whether there is a reasonable likelihood that the outcome would have been different. *United States v. Aguirre-Tello*, 353 F.3d 1199, 1209 (10th Cir. 2004) (en banc).

Against this backdrop, we now examine petitioner's claims of prejudice. It is important to keep in mind that the proceeding petitioner seeks to reopen is the underlying removal proceeding. His claim of ineffective assistance of counsel, therefore, is confined to counsel's actions surrounding that proceeding and, despite present counsel's efforts, cannot be read to include prior counsel's actions regarding the 1999 petition or the circumstances surrounding the 1996 petition.

Petitioner first points to counsel's concession at the removal hearing that he was not eligible for voluntary departure as an example of the prejudice he has suffered as a result of counsel's ineffective assistance.[6] In order to establish prejudice under these circumstances, petitioner must demonstrate that he was eligible for relief in the form of voluntary departure. *See In re Assaad*, 23 I&N Dec. at 562. There are several showings an alien must make before he or she is eligible for the discretionary grant of voluntary departure. *See* 8 C.F.R. § 1240.26(c). Our review of the record has failed to uncover any evidence that

---

[6]      As petitioner explains, "[i]ndividuals who leave the United States under an order of removal are barred from re-entering for a period of ten years. . . . 8 U.S.C. § 1182(a)(9)(A). In contrast, individuals who depart under an order of voluntary departure are free to immediately apply for re-admission if eligible for a visa." Pet'r Opening Br. at 18 n.8.

petitioner made this showing in the materials before either the IJ or the BIA.[7] Other than conclusory statements going to petitioner's eligibility for voluntary departure in his motion to reopen, which are insufficient to discharge petitioner's prima facie burden, petitioner has failed to establish that he meets the requirements relative to residency, character, criminal record, or financial means and intent to depart required before consideration for discretionary voluntary departure is even possible. *See id.* Because petitioner has failed to show a reasonable likelihood of a different outcome had his counsel treated the voluntary departure issue differently, he has failed to demonstrate the prejudice necessary to establish a due process violation. The BIA therefore did not abuse its discretion in refusing to reopen based on petitioner's failure "to establish his *prima facie* eligibility for voluntary departure in his motion to reopen." Admin. R. at 3.

Petitioner's second example of prejudicially ineffective assistance of counsel involves counsel's failure to challenge the INS's finding of marriage fraud and further failure to diligently prosecute an appeal from the denial of petitioner's 1999 petition. As the BIA implicitly reasoned, these matters were not before the IJ in the removal hearing. Issues surrounding the alleged marriage fraud should have been resolved in an appeal from the denial of the 1996 petition; an appeal from the denial of the 1999 petition is apparently still pending.

---

[7] As noted earlier, petitioner had retained new counsel, although not his present counsel, for his appeal of the removal order to the BIA.

We agree with petitioner that the presence in his record of evidence of a fraudulent marriage intended to win an immigration benefit probably colored the removal proceedings and may have even created the impression that petitioner was attempting to continue a pattern of fraud. The INS's attorney referred repeatedly to the evidence of fraud in petitioner's immigration file. *See id.* at 181-82, 187. In denying petitioner any relief, the IJ stated, "I think that this thing has been developing where he came to the United States and he was going to stay one way or the other. If he had to marry 10 women, he's going to marry 10. He's married two already. I'm not going to listen to it anymore." *Id.* at 189-90.

Again, the problem for petitioner with this argument is that his attorney's actions regarding the prior petitions were not before the IJ in the removal hearing. The only ground for removal indicated in the notice to appear was petitioner's status as an overstay. *Id.* at 255. Any issues of previous fraud went unmentioned in the notice. Therefore, the IJ would not have been able to undo the denials of petitioner's two prior attempts to adjust his status. Given the procedural posture of petitioner's case at the removal hearing, it was not reasonably likely that representation by other competent counsel would have changed the outcome. The BIA thus did not abuse its discretion in concluding that it "did not have jurisdiction to allow the respondent to seek recourse before the [INS] for his prior counsel's alleged ineffective assistance." *Id.* at 2.

-13-

Petitioner argues finally that due process requires a hearing on the merit of his voluntary departure request. We have already affirmed the BIA's conclusion that petitioner did not establish his prima facie eligibility for discretionary voluntary departure as a basis for his motion to reopen. To the extent this argument is an attempt to have this court reverse the ruling of the IJ on that matter, we lack jurisdiction to take such action. *See Ekasinta v. Gonzales*, 415 F.3d 1188, 1190 (10th Cir. 2005).

In summary, we conclude that the BIA provided rational explanation for its denial of the motion to reopen, it did not depart from established policies, and it provided adequate reasoning to allow judicial review. *See Infanzon*, 386 F.3d at 1362. The petition for review in No. 05-9573 is therefore denied.

## Habeas petition

## Case No. 05-9587

Petitioner's petition for a writ of habeas corpus was pending in the district court on May 11, 2005, the date of the enactment of the Real ID Act. "[T]he Real ID Act eliminates a district court's jurisdiction over habeas petitions challenging final orders of removal. However, the Real ID Act did not eliminate a district court's jurisdiction to review habeas petitions challenging an alien's detention." *Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006). Here, petitioner filed a mixed petition challenging both the IJ's removal order and his continued detention. Because the challenge to his detention is grounded in the removal

-14-

order rather than based on some inherent problem with the detention itself, however, the district court properly transferred the petition to this court, and we will treat it as a petition for review of the removal order.[8] We have jurisdiction to review the latter under 8 U.S.C. § 1252(a). *Id.* at 1132.

## Analysis

Petitioner's habeas petition raises the same issues as his petition for review of the BIA's denial of his motion to reopen. Essentially, he argues that counsel's handling of the voluntary departure issue and his failure to challenge the INS's earlier fraud finding resulted in the issuance of a removal order and violated his rights to substantive and procedural due process.

The BIA affirmed the removal order in a brief order authorized by 8 C.F.R. § 1003.1(e)(5) and signed by one BIA member. The BIA's decision, therefore, constitutes the final order of removal, and "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). "[W]here the BIA determines a petitioner is not eligible for relief, we review the decision to determine whether the record on the whole provides substantial support for that determination." *Id.*

---

[8] The Conference Report accompanying the Real ID Act makes it clear that § 106 of that Act does not eliminate district court jurisdiction to review habeas "challenges to detention that are *independent of challenges to removal orders.*" *See* H.R. Rep. No. 109-72, at 175 (2005) (Conf. Rep.) *as reprinted in* 2005 U.S.C.C.A.N. 240, 300 (emphasis added).

In appealing the removal order to the BIA, petitioner focused almost exclusively on the propriety of the IJ's denial of a second continuance, which petitioner had sought to permit the adjudication of his wife's latest I-130 immigrant-relative visa petition. *See* Admin. R. at 136-40. In affirming the removal order, the BIA reasoned that because petitioner had admitted that a prior petition to adjust his status had been denied because of fraud, "he was not eligible for any form of relief, and, in light of the evidence of record, likely was not going to be eligible for the requested relief." *Id*. at 123. Therefore, the BIA concluded that petitioner had not presented good cause to justify the second continuance.

## Conclusion

Our review of the record satisfies us that the BIA's affirmance of the removal order is supported by substantial evidence in the record as a whole. The petition for a writ of habeas corpus, converted in this court to a petition for review of petitioner's removal order, and assigned No. 05-9587, is therefore DENIED. The petition for review in No. 05-9573 is also DENIED.

Entered for the Court

Stephen H. Anderson
Circuit Judge

-16-